# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-018

Filing Date: June 1, 2012

Docket No. 32,510

STATE OF NEW MEXICO,

> Plaintiff-Respondent,

v.

MICHAEL SWICK,

> Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Louis P. McDonald, District Judge

Jacqueline Cooper, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Justice.**

{1}     On the morning of January 21, 2006, Michael Swick, along with his cousin, Benito Lopez, and the victim, Alex Ogle, began a day of cruising and drinking alcohol in a borrowed Jeep. The three rode around for most of the day getting the Jeep stuck. Late in the afternoon, Swick and his cousin also consumed cocaine. They decided to walk because the Jeep was stuck and it was getting dark. Shortly thereafter, Swick's cousin returned to the Jeep to get warmer clothes.

1

**{2}** After getting a jacket from the Jeep, Swick's cousin walked back toward the place where he had left Swick and Ogle. When he arrived, he found Swick standing, holding a large 15-pound rock, with Ogle lying on the ground beneath him. Swick had stabbed Ogle and bludgeoned him on the head with the rock. Swick and his cousin walked from the crime scene and had agreed to steal a car as they approached the home of Carlos and Rita Atencio. Mrs. Atencio answered the door, and they told her that their Jeep was stuck. She let them in so that they could use the telephone. When they entered the house, Swick stabbed Mrs. Atencio, and both men continued to beat, stab, and slash her and her husband. Swick and his cousin left with $14.00 and a van owned by the Atencios.

**{3}** Swick was indicted with first-degree murder for Ogle's killing. The indictment also charged him with 25 additional counts for the offenses at the Atencio home, including conspiracies, attempted first-degree murders, aggravated batteries with a deadly weapon, aggravated burglaries with a deadly weapon, and aggravated burglaries based on the battery of Mr. and Mrs. Atencio.

**{4}** During the second day of trial, Swick had an outburst in court and had to be restrained by court security officers. Some of the jurors witnessed the incident. The trial court attempted to remedy the situation by extensively polling the jurors and asking whether they could be fair after the incident, to which all of the jurors answered yes. Swick moved for a mistrial, which was denied by the trial court.

**{5}** At the close of the State's case, defense counsel tendered an instruction to the trial court for voluntary manslaughter as a result of sufficient provocation and, in the alternative, an instruction for self-defense. The trial court declined to give an instruction for self-defense. The trial court did instruct the jury on voluntary manslaughter, concluding that it was for the jury to determine whether Swick acted with sufficient provocation. However, without objection, the trial court instructed the jury on second-degree murder, although it neglected to include "without sufficient provocation" as an element of the crime.

**{6}** The jury found Swick guilty of second-degree murder of Ogle as a step-down from first-degree murder and guilty of all of the remaining charges against him related to the Atencios. Swick appealed to the New Mexico Court of Appeals, raising issues regarding double jeopardy, jury instructions, and challenging the trial court's denial of his motion for a mistrial. The Court of Appeals upheld all of his convictions, holding that (1) Swick's convictions for two counts of attempted murder and two counts of aggravated battery with a deadly weapon did not violate the double jeopardy prohibition pursuant to *State v. Armendariz*, 2006-NMSC-036, ¶¶ 24-25, 140 N.M. 182, 141 P.3d 526; *see State v. Swick*, 2010-NMCA-098, ¶¶ 20-21, 148 N.M. 895, 242 P.3d 462; (2) Swick's convictions for one count of aggravated burglary (deadly weapon) and two counts of aggravated burglary (battery) did not violate the double jeopardy prohibition, *Swick*, 2010-NMCA-098, ¶¶ 28-29; (3) it was not fundamental error to issue an erroneous jury instruction on second-degree murder when subsequent proper instructions corrected the error, *id.* ¶¶ 7-8; (4) an instruction on self-defense was not warranted in this case, *id.* ¶¶ 17-18; and (5) the trial court did not

abuse its discretion by denying Swick's motion for a mistrial, *id.* ¶ 34. We granted Swick's petition for writ of certiorari, and we (1) vacate both of Swick's convictions for aggravated battery with a deadly weapon and his two convictions for aggravated burglary based on battery because these convictions violate the constitutional prohibition against double jeopardy; (2) remand to the trial court for a new trial on the second-degree murder conviction because the instruction regarding second-degree murder was erroneous; (3) affirm the trial court's rejection of the self-defense jury instruction; and (4) affirm the trial court's denial of the motion for a mistrial. Accordingly, we affirm the Court of Appeals in part and reverse in part.

## I.    DOUBLE JEOPARDY

**{7}**    After leaving the scene of Ogle's killing, Swick and his cousin decided to steal a car and ended up at the home of the Atencios. When they arrived they found several vehicles in the Atencio yard, but none were operable. Swick's cousin then knocked on the door, and Mrs. Atencio answered. They asked if they could come in and use the phone, to which Mrs. Atencio responded, "Yeah, come in." As soon as she let them in the house, Swick rushed past his cousin and stabbed Mrs. Atencio in the back. Swick then went to Mr. Atencio, who was sitting on the couch, and began to beat and stab him. They left with $14.00 and a van owned by the Atencios.

**{8}**    Swick was convicted of eleven felony counts arising from his conduct at the Atencio residence and contends that four counts must be vacated. He contends that the prohibition against double jeopardy was violated when he was convicted of (1) two counts of first-degree attempted murder and two counts of third-degree aggravated battery arising out of unitary conduct, and (2) two counts of aggravated burglary (battery) and one count of aggravated burglary (deadly weapon) arising out of unitary conduct. Regarding the first claim, the Court of Appeals affirmed Swick's convictions without reaching the merits, citing *State v. Glascock*, 2008-NMCA-006, ¶ 26, 143 N.M. 328, 176 P.3d 317, for the proposition that the Court of Appeals is bound by Supreme Court precedent established in *Armendariz*. *Swick*, 2010-NMCA-098, ¶ 21.

**{9}**    The Court of Appeals also rejected Swick's second double jeopardy claim regarding the aggravated burglary convictions. The Court of Appeals assumed that the conduct underlying the two convictions was unitary and therefore limited its analysis to whether the Legislature authorized multiple punishments for aggravated burglary under different theories. *Id*. ¶¶ 25, 29. The Court of Appeals held that the Legislature authorized multiple punishments because NMSA 1978, Sections 30-16-4(B) (burglary involving a deadly weapon) and 30-16-4(C) (burglary involving battery) (1963) addressed different social evils that required separate punishments—to deter criminals from using deadly weapons in burglaries versus to address actual physical injury to persons during burglaries. *Swick*, 2010-NMCA-098, ¶¶ 26, 29. The Court of Appeals acknowledged that the same quantum of punishment is prescribed for each subsection, suggesting that separate punishments may

3

be inappropriate.[1] *Id.* ¶ 29. Despite this acknowledgment, the Court of Appeals concluded that the Legislature intended multiple punishments. *Id.* ¶¶ 28-29.

**{10}** A double jeopardy challenge is a constitutional question of law which we review de novo. *See State v. Gallegos*, 2011-NMSC-027, ¶ 51, 149 N.M. 704, 254 P.3d 655. The Fifth Amendment of the United States Constitution prohibits double jeopardy and is made applicable to New Mexico by the Fourteenth Amendment. U.S. Const. amends. V & XIV, § 1; *Benton v. Maryland*, 395 U.S. 784, 787 (1969). It functions in part to protect a criminal defendant "against multiple punishments for the same offense." *State v. Gutierrez*, 2011-NMSC-024, ¶ 49, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citations omitted). There are two classifications of double jeopardy multiple-punishment cases. The first is the double-description case, where the same conduct results in multiple convictions under different statutes. *Gallegos*, 2011-NMSC-027, ¶ 31. The second is the unit-of-prosecution case, where a defendant challenges multiple convictions under the same statute. *Id.* As will be explained below, Swick's first double jeopardy challenge is a double-description case, while his second is a unit-of-prosecution case.

**A.** **SEPARATE CONVICTIONS FOR ATTEMPTED MURDER AND AGGRAVATED BATTERY ARISING FROM THE SAME CONDUCT VIOLATE THE PROHIBITION AGAINST DOUBLE JEOPARDY.**

**{11}** Double-description claims are subject to the two-part test set forth in *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991). First we consider whether the conduct underlying the two convictions was unitary (the same conduct). If it is not, then there is no double jeopardy violation. If it is unitary, we consider whether it was the Legislature's intent to punish the two crimes separately. *Id.* at 13, 810 P.2d at 1233. In analyzing legislative intent, we first look to the language of the statute itself. *State v. Frazier*, 2007-NMSC-032, ¶ 21, 142 N.M. 120, 164 P.3d 1. If the statute does not clearly prescribe multiple punishments, then the rule of statutory construction established in *Blockburger v. United States*, 284 U.S. 299 (1932) applies. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

**{12}** Under *Blockburger*, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does

---

[1]This Court and the Court of Appeals have used the quantum of punishment to support the proposition that the Legislature did not intend to punish the two crimes separately, both when the amount of punishment is the same and when the amount differs. *Compare Swick*, 2010-NMCA-098, ¶ 29 ("The quantum of punishment under either subsection is the same, which might suggest that separate punishments are inappropriate."), *with Armendariz*, 2006-NMSC-036, ¶ 25 ("In comparing the quantum of punishment for each offense, the difference in the amount of punishment is arguably an indication that the Legislature did *not* intend [the offenses] to be separately punishable.").

not." 284 U.S. at 304. If the statute is "vague and unspecific," *Gutierrez*, 2011-NMSC-024, ¶ 59 (internal quotation marks omitted), or written in the alternative, courts must consider the State's legal theory in assessing whether each provision requires proof of a fact which the other does not. *Id*. ¶ 58.

**{13}** If each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute. *Swafford*, 112 N.M. at 9, 14, 810 P.2d at 1229, 1234. However, this is only an inference that leads to an examination of other indicia of legislative intent. *Id.* at 14, 810 P.2d at 1234. "Legislative intent may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors." *State v. Pedro Gonzales*, 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992). If after examining the relevant indicia the legislative intent remains ambiguous, the rule of lenity requires us to presume that the Legislature did not intend multiple punishments for the same conduct. *Swafford*, 112 N.M. at 15, 810 P.2d at 1235.

**{14}** We previously held in *Armendariz* that the Legislature authorized multiple punishments for attempted murder and aggravated battery,[2] even when they arise from the same conduct. *Armendariz*, 2006-NMSC-036, ¶¶ 24-25. In *Armendariz*, as in this case, the defendant was convicted of attempted first-degree murder and aggravated battery arising from the same conduct. *Id*. ¶ 5. After a "chaotic altercation" between the two victims and the defendant outside a bar, the defendant left the scene. However, the defendant returned with a gun and shot both victims. One of the victims survived. *Id*. ¶ 4. The defendant challenged his convictions, arguing that the Legislature did not intend to punish each crime separately when the underlying conduct for both charges was unitary. *See id*. ¶ 23. The State did not dispute that the conduct underlying the offense was unitary, so the *Armendariz* Court proceeded to the second prong of the *Swafford* analysis. *Armendariz*, 2006-NMSC-036, ¶ 23.

**{15}** The *Armendariz* Court first applied the *Blockburger* test and found that each crime contained an element that the other did not. *Armendariz*, 2006-NMSC-036, ¶ 24. Attempted murder requires proof of an overt act, intent to commit murder, and failure to complete the crime, which are not elements required to prove aggravated battery. *Id*. Aggravated battery requires an unlawful application of force, which is not an element of attempted murder. *Id*. Therefore, the Court concluded that a presumption arose that the Legislature intended separate punishments under these two statutes. *Id.*

**{16}** The *Armendariz* Court then looked to other indicia of legislative intent. *Id*. ¶ 25.

_____

[2]NMSA 1978, § 30-2-1 (1963, as amended through 1994) (murder); NMSA 1978, § 30-28-1 (1963) (attempt to commit a felony); and aggravated battery, NMSA 1978, § 30-3-5 (1969) (aggravated battery).

5

First, the Court recognized that attempted murder and aggravated battery were enacted to address different social harms, punishing the state of mind in attempted murder and punishing actual harm in aggravated battery. *Id.* Second, the Court reasoned that there was no language in either statute which indicated an intent that these crimes were alternative ways of committing the same crime. *Id.* Third, the Court explained that the two crimes do not necessarily have to be violated at the same time. *Id.* In other words, a defendant can commit attempted murder without also committing battery. The *Armendariz* Court used these three indicia to find a presumption of legislative intent to allow separate punishments. *Id.* The *Armendariz* Court also recognized that the Legislature may not have intended separate punishments because the punishment for attempted first-degree murder is triple the punishment for aggravated battery.[3] *Id.* However, the Court held that this disparity in punishment was insufficient to overcome what it considered to be a presumption of legislative intent to punish both crimes separately. *Id.* Despite legislative intent remaining ambiguous, the *Armendariz* Court did not apply the rule of lenity, and therefore it upheld the defendant's convictions for both attempted murder and aggravated battery arising from the same conduct. *See id.*

**{17}** Swick has asked this Court to overrule our holding in *Armendariz*. The factors we consider before overruling a prior decision are:

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*State v. Riley*, 2010-NMSC-005, ¶ 34, 147 N.M. 557, 226 P.3d 656 (quoting *State v. Pieri*, 2009-NMSC-019, ¶ 21, 146 N.M. 155, 207 P.3d 1132). "[W]hen one of the aforementioned circumstances convincingly demonstrates that a past decision is wrong, the Court has not hesitated to overrule even recent precedent." *Pieri*, 2009-NMSC-019, ¶ 21 (internal quotation marks and citations omitted).

**{18}** Three of the *Riley* factors do not apply to this case. The second factor, justifiable reliance, which is most important in cases implicating property and contract rights, and least important in cases involving procedural and evidentiary rules, is not present in this case. *See Payne v. Tennessee*, 501 U.S. 808, 828 (1991); *see also Arizona v. Gant*, 556 U.S. 332, 349-50 (2009) (rejecting the State's argument in that case that police officers relied on the

---

[3]Attempted first-degree murder is a second-degree felony punishable by imprisonment for nine years. *See* NMSA 1978, § 31-18-15(A)(6) (2007); § 30-28-1(A). Aggravated battery is a third-degree felony punishable by imprisonment for three years. *See* § 31-18-15(A)(9).

6

"*Belton* rule," and therefore developed a cognizable reliance interest that justified upholding the rule).  The State could not have relied on *Armendariz* to its detriment because the double jeopardy prohibition is applied at the conclusion of a case to prevent multiple punishments.  The third factor, which analyzes whether the rule is only a remnant of an abandoned doctrine, is likewise inapplicable.  The test established in *Swafford,* 112 N.M. at 13, 810 P.2d at 1233, is hardly "a remnant of abandoned doctrine," although the principles of double jeopardy have developed since *Swafford* and have been modified by *Gutierrez*, 2011-NMSC-024, ¶ 58.  Subject to subsequent modifications, *Swafford* remains the test to be applied in every case challenging convictions on double jeopardy grounds.  Finally, the fourth and final factor does not apply because the Legislature has not modified the statutes defining Swick's crimes since *Armendariz* was decided.

**{19}**     However, the first *Riley* factor, which examines whether the rule is so unworkable so as to be intolerable, does apply.  While the precedent established in *Armendariz* is efficient and predictable, stare decisis is neither an "inexorable command," *Lawrence v. Texas*, 539 U.S. 558, 577 (2003), nor "a mechanical formula of adherence to the latest decision."  *Helvering v. Hallock*, 309 U.S. 106, 119 (1940).  We conclude that the modifications to double jeopardy jurisprudence make this Court's opinion in *Armendariz* so unworkable as to be intolerable.  We therefore overrule *Armendariz*.  We will show how the modifications to our double jeopardy jurisprudence since deciding *Armendariz* lead us to conclude that the Legislature did not intend multiple punishments for attempted murder and aggravated battery arising from the same conduct because the latter is subsumed by the former.  *See Gutierrez*, 2011-NMSC-024, ¶ 56.

**{20}**     The parties in this case do not dispute that the underlying conduct supporting both convictions was unitary.  Swick explicitly asserted in his opening brief that the conduct underlying these two convictions was unitary.  The State did not challenge this assertion in its answer brief.  Thus, the question before this Court is whether the Legislature authorized multiple punishments under the statutes for attempted murder and aggravated battery with a deadly weapon for the same conduct.  We conclude that it did not.

**{21}**     Since we decided *Armendariz*, this Court has modified the *Blockburger* analysis to be used in New Mexico.  *See Gutierrez*, 2011-NMSC-024, ¶ 58.  In *Gutierrez*, we rejected the approach used in *Armendariz*, which is a strict elements test, in order to be more in line with United States Supreme Court precedent.  *Gutierrez*, 2011-NMSC-024, ¶ 58.  We clarified that, in the abstract, the application of *Blockburger* should not be so mechanical that it is enough for two statutes to have different elements.  *Gutierrez*, 2011-NMSC-024, ¶ 58.  Instead, we held in *Gutierrez* that when a statute is "vague and unspecific," *id.* ¶ 59 (internal quotation marks omitted), our courts must evaluate legislative intent by considering the State's legal theory independent of the particular facts of the case, *id.* ¶ 58.  Our courts may do this by examining the charging documents and the jury instructions given in the case.  *Id.* ¶ 53.

**{22}**     According to Counts III and IV of the indictment in this case, to prove first-degree

attempted murder, the State had to prove:

> That on or about the 21st day of January, 2006, in Sandoval County, New Mexico, the above named defendant, did attempt to commit Murder, in that the defendant intended to commit Murder, and began to do an act which constituted a substantial part of Murder, but failed to commit the offense, contrary to §30-28-01, and §30-02-01, NMSA 1978, as amended.

Although the indictment, the jury instructions, and the verdict forms are silent as to the identity of the attempted-murder victims, it is clear that the victims are Carlos and Rita Atencio.

**{23}** Counts V and VI, which charge third-degree aggravated battery with a deadly weapon, read:

> That on or about the 21st day of January, 2006, in Sandoval County, New Mexico, the above-named defendant, did touch or apply force to Carlos Atencio, [Count V or Rita Atencio, Count VI] with [a] knife, [a] cane, and a leg from a chair or table, which was a deadly weapon, intending to injure Carlos Atencio, [Count V or Rita Atencio, Count VI], or another, contrary to §30-3-5, NMSA 1978, as amended.[4]

**{24}** As this Court recognized in *Armendariz*, attempted murder and aggravated battery are not always committed together. 2006-NMSC-036, ¶ 25. However, under *Gutierrez*, when the two statutory crimes are committed together, as they were in this case, the trial court must look to the State's theory of the case and the elements of the crime charged if one of the statutes is a generic, multi-purpose statute that is "vague and unspecific." 2011-NMSC-024, ¶ 59 (internal quotation marks omitted). The Legislature is always free to express its intent to punish the same conduct under more than one statute. However, if legislative expression is absent and one statute is subsumed by the other, then convictions for both cannot stand. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

**{25}** Under the attempted murder statutes, §§ 30-28-1 & 30-2-1, many forms of conduct can support the "began to do an act which constituted a substantial part of Murder" element. Therefore, attempted murder is a generic, multipurpose statute that is "vague and unspecific," and we must look to the State's theory of the case to inform what "began to do an act which constituted a substantial part of Murder" means *in this case*. When doing so, we are persuaded that the State used the aggravated batteries to prove the element of "began to do an act which constituted a substantial part of Murder." The State argues that, even after an examination of the charging document and the jury instructions, the elements of the

---

[4]The jury instructions substantially mirrored the language of the charging document for both crimes.

attempt statute are still vague. It is true that one must infer what the "began to do an act" element is after reading the charging document or the jury instructions. However, the State does not offer an alternative act that could have been the basis for this element. As Justice Bosson stated in his special concurrence in *Gutierrez*, "[a] prosecutor should not be allowed to defeat the constitutional protections afforded by the double jeopardy clause" by clever indictment drafting. 2011-NMSC-024, ¶ 79 (Bosson, J., specially concurring).

**{26}** The State's legal theory at the outset of trial was that after Swick entered the Atencios' home, he "proceed[ed] to try [to] kill them." Moreover, the State proffered the same testimony to prove the aggravated batteries as it did to prove the attempted murders, which was that Swick beat, stabbed, and slashed Mr. and Mrs. Atencio after entering their home. Finally, the State, in its closing argument, after giving the elements of attempted murder, asked the jury, "[w]hy is this attempted murder and not just aggravated battery?" After a recitation of the same evidence that the State used to support the aggravated battery charge earlier in its closing, it concluded with "[t]his kind of excessive violence is supportive of an intent to kill."

**{27}** The theory of the State's case to support the charges of aggravated battery with a deadly weapon and also the charges of attempted murder was that Swick beat, stabbed, and slashed the Atencios. In other words, considering the State's theory of the case, the aggravated battery elements were subsumed within the attempted murder elements. When this occurs, the double jeopardy prohibition is violated, and "punishment cannot be had for both." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

**{28}** We find *Brown v. Ohio*, 432 U.S. 161, 167 (1977), instructive on this point. In *Brown*, the United States Supreme Court recognized that each state court has the "final authority" to interpret its state's legislation. *See id.* Consistent with this principle, the Court in *Brown* upheld the Ohio Court of Appeals' holding construing joyriding as a lesser-included offense of auto theft, where the statutory language left ambiguous whether the greater offense included all of the elements of the lesser offense. *See id.* at 162 & n.1, 163 & n.2. The *Brown* Court recognized that state courts may properly conclude that one offense subsumes another, despite ambiguous language, through statutory construction. *See id.* at 166-68. By looking to the legal theory of the case, that is precisely what we do here. *See Davis v. State*, 770 N.E.2d 319, 324 (Ind. 2002) (vacating a conviction for aggravated battery when there was a reasonable possibility that the jury relied on the same act by the defendant to convict the defendant of aggravated battery as it did to convict the defendant of attempted murder); *People ex rel. Walker v. Pate*, 292 N.E.2d 387, 390 (Ill. 1973) (observing that it was error for a district court to impose sentences for both aggravated battery and attempted murder because the convictions arose from the same conduct and aggravated battery is a lesser-included offense of attempted murder).

**{29}** Even if the elements of attempted murder do not subsume the elements of aggravated battery, an examination of these statutes leads us to conclude that Swick's convictions violate the double jeopardy prohibition, contrary to the holding in *Armendariz*, for two

reasons. First, the social harms addressed by each statute do not conclusively indicate an intent to punish separately. Regarding social harms, the *Armendariz* Court concluded that "[t]he prohibition against attempted murder is directed at protecting a person's life and the statute is directed at punishing a person's state of mind, whereas the prohibition against aggravated battery is directed at protecting a person from bodily injury and the statute is directed at punishing actual harm." 2006-NMSC-036, ¶ 25. Another reasonable assessment of the social harms is that both statutes address the social evil of harmful attacks on a person's physical safety and integrity. Both statutes punish overt acts against a person's safety but take different degrees into consideration. The aggravated battery statute concerns itself with the intent to harm and the attempted murder statute concerns itself with the intent to harm fatally. However, this is only one factor to consider in the analysis. Even if we accept as true that different social harms may be addressed by each statute, *Swafford* explained that "[i]f the punishment attached to an offense is enhanced to allow for kindred crimes, these related offenses may be presumed to be punished as a single offense." 112 N.M. at 15, 810 P.2d at 1235. Aggravated battery committed with an intent to cause great bodily harm is punishable by three years in prison. NMSA 1978, §§ 31-18-15(A)(9) (2007), 30-3-5(C). However, when the aggravated battery is committed with an intent to kill (attempted murder), the Legislature has enhanced the punishment to nine years. *See* §§ 31-18-15(A)(6), 30-2-1, 30-28-1. In other words, the Legislature intended that Swick be punished more harshly when he stabbed the Atencios with the intent to kill them rather than with the intent merely to injure them.

**{30}** Second, the rule of lenity should have been applied in Swick's favor. The United States Supreme Court has held that when doubt regarding legislative intent remains, ambiguity "must be resolved in favor of lenity." *Whalen v. United States*, 445 U.S. 684, 694 (1980). We apply the rule of lenity in this case because reasonable minds can differ as to the Legislature's intent in punishing these two crimes. *Santillanes v. State*, 115 N.M. 215, 221, 849 P.2d 358, 364 (1993). And when we apply the rule of lenity to convictions under the attempted murder and aggravated battery with a deadly weapon statutes arising from unitary conduct, we must hold that multiple convictions cannot stand.

**{31}** Because our application of *Blockburger* has been modified to bring it closer in line with United States Supreme Court precedent, we overrule *Armendariz* and vacate the convictions that carry the lesser punishment. *See State v. Santillanes*, 2001-NMSC-018, ¶¶ 28, 30, 130 N.M. 464, 27 P.3d 456 ("'[T]he general rule requires that the lesser offense be vacated' in the event of impermissible multiple punishments. . . . We believe that the degree of felony . . . is an appropriate measure of legislative intent regarding which of two offenses is a greater offense." (internal citation omitted)); *see also Jones v. Thomas*, 491 U.S. 376, 387 (1989) ("[W]here *concurrent* sentences are imposed, unlawful imposition of two sentences may be cured by vacating the shorter of the two sentences."); *People v. Fuentes*, 258 P.3d 320, 326 (Colo. App. 2011) ("[W]e must maximize the effect of the jury's verdict and retain the greatest number of convictions and longest sentence."); *State v. Polson*, 145 S.W.3d 881, 897 (Mo. Ct. App. 2004) ("[W]e can cure the violation [of the double jeopardy prohibition] by ordering that the shorter of the [two] sentences be vacated." (internal

10

quotation marks and citation omitted)); *State v. Valenzona*, 2007-Ohio-6892, ¶ 36 ("Public policy suggests that where two charges are allied offenses of similar import, the offense with the longer sentence should be preferred over the offense with the shorter sentence." (internal quotation marks and citation omitted)); *State v. Scribner*, 746 A.2d 145,147-48 (Vt. 1999) ("Vacating the shorter sentence fully vindicates defendant's rights."). Therefore, because the two convictions for third-degree aggravated battery and the two convictions for attempted murder violate the prohibition against double jeopardy, we remand this case to the trial court to vacate the two convictions for aggravated battery with a deadly weapon.

**B.      TWO CONVICTIONS FOR AGGRAVATED BURGLARY WHILE COMMITTING A BATTERY AND ONE CONVICTION FOR AGGRAVATED BURGLARY WITH A DEADLY WEAPON ARISING FROM A SINGLE UNAUTHORIZED ENTRY VIOLATE THE PROHIBITION AGAINST DOUBLE JEOPARDY.**

**{32}**      Swick's second double jeopardy argument challenges his two convictions for aggravated burglary while committing a battery, § 30-16-4(C), and one conviction for aggravated burglary with a deadly weapon, § 30-16-4(A).  The Court of Appeals upheld Swick's convictions, *Swick*, 2010-NMCA-098, ¶ 29, assuming without deciding that the convictions were based on the same conduct, *id.* ¶¶ 23-25.  However, the Court of Appeals held that the convictions constituted separate and distinct offenses because a separate underlying theory regarding the protected social interests supports each of the two offenses, and because Subsections A and C have different elements and different purposes.  *Swick*, 2010-NMCA-098, ¶¶ 24-29.  We agree that these subsections have different elements. However, we conclude that the Legislature has clearly defined the unit of prosecution to be based on an unauthorized entry with the intent to commit a felony therein.

**{33}**      We apply a unit-of-prosecution analysis because we are examining multiple convictions under the same statute.  *See Gallegos*, 2011-NMSC-027, ¶ 31.  This analysis requires courts to determine the unit of prosecution intended by the Legislature by employing a two-part test, both parts of which are concerned with legislative intent.  *Id.* ¶¶ 31-32.  First, courts must analyze the statute at issue to determine whether the Legislature has defined the unit of prosecution.  If the unit of prosecution is clear from the language of the statute, the inquiry is complete.  If the unit of prosecution is not clear from the statute at issue, including its wording, history, purpose, and the quantum of punishment that is prescribed, courts must determine whether a defendant's acts are separated by sufficient "indicia of distinctness" to justify multiple punishments.  *Id.* ¶ 31 (internal quotation marks and citation omitted).  In this case, we do not reach the second part of the test because we conclude that the Legislature defined the unit of prosecution to be an unlawful entry with intent to commit a felony therein.

**{34}**      Section 30-16-4 defines the relevant elements for aggravated burglary as follows:

Aggravated burglary consists of the unauthorized entry of any . . .

dwelling . . . , with intent to commit any felony or theft therein and the person either:

> A.     is armed with a deadly weapon;
>
> B.     after entering, arms himself with a deadly weapon;
>
> C.     commits a battery upon any person while in such place, or in entering or leaving such place.

**{35}**    The State's theory is that Swick committed three aggravated burglaries, and that the first aggravated burglary occurred when he entered the Atencios' home without authority and armed with a knife. The State argues that the crime of aggravated burglary under Section 30-16-4(A) was complete the instant Swick entered the dwelling with a deadly weapon. The State also contends that the second and third aggravated burglaries occurred when Swick used the knife to commit battery upon the Atencios while he was inside the dwelling. However, these contentions are not supported or contemplated by the statute and we therefore decline to divide one offense into separate means used to accomplish the ultimate goal, which was the unlawful entry into the dwelling with the intent to commit a felony therein. *State v. LeFebre*, 2001-NMCA-009, ¶¶ 18, 23, 130 N.M. 130, 19 P.3d 825 (vacating one of the defendant's convictions for resisting, evading, or obstructing an officer under several subsections of the same statute, NMSA 1978, § 30-22-1 (1981) (providing that evading could take place either on foot or in a vehicle, because it was all part of the unitary conduct to evade officers). *See also Gallegos*, 2011-NMSC-027, ¶ 55 (inferring that "the Legislature established what we will call a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed"). This is particularly true when the State concedes that the conduct underlying Swick's three convictions for aggravated burglary was unitary because Swick "could not have committed [the aggravated burglaries based on the batteries] without first arming himself with the knife."

**{36}**    Nonetheless, the State argues that threatening a homeowner with a deadly weapon is one social evil that Section 30-16-4 addresses, and battering a homeowner during a burglary is another. Even assuming this to be an accurate characterization of the social evils to be addressed by the statute, it is clear from the structure of the statute alone that *each aggravated burglary requires an unauthorized entry*. When there is only one entry, only one of these aggravating factors is needed to support punishing the burglary as a second-degree felony instead of a third-degree felony. *See* NMSA 1978, §§ 30-16-3 (1971), 30-16-4. Therefore, we need not go on to the second step of the unit-of-prosecution analysis and hold that when there is only one unauthorized entry, there can only be one aggravated burglary. Section 30-16-4.

**{37}**    Courts in other jurisdictions with similar aggravated burglary statutes have also held that a defendant cannot be convicted of more than one aggravated burglary when there is

only one unauthorized entry. For example, in *Fuentes*, two men, including the defendant, forced their way into a house and assaulted two victims. 258 P.3d at 322. The defendant was found guilty of assault and two counts of first-degree burglary based upon the two assaults. *Id.* at 321. The defendant argued that the double jeopardy clause precluded his conviction of the two counts of first-degree burglary because there was only one entry, although two people were assaulted. *Id.* at 322.

{38}    The Colorado Court of Appeals phrased the question as follows: "we must determine whether defendant's assault on two people in the course of a single unlawful entry of an occupied structure constitutes the same offense or multiple offenses under the first degree burglary statute." *Id.* at 323. Colorado's first-degree burglary statute provides:

> A person commits first degree burglary if the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime, other than trespass as defined in this article, against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person or another participant in the crime assaults or menaces any person, or the person or another participant is armed with explosives or a deadly weapon.

*Id.* (quoting Colo. Rev. Stat. § 18-4-202(1) (2010) (internal quotation marks omitted).

{39}    The court noted that the Colorado first-degree burglary statute encompassed the same elements as the second-degree burglary statute, which is violated when a person "knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." *Id.* (quoting Colo. Rev. Stat. § 18-4-203(1) (2010) (internal quotation marks omitted). The Colorado Court of Appeals noted that burglary is a form of trespass coupled with an intent to commit a crime in a building. *Id.*

{40}    The prosecution contended that even if the second-degree burglary statute is primarily concerned with property interests, the "first degree burglary [statute] is primarily intended to protect persons because the additional elements proscribe conduct that poses great danger to others." *Id.* at 324. The Colorado Court of Appeals rejected this argument because although the additional elements address risk to persons, these elements only "modify and aggravate the principal crime of burglary; they do not change the gravamen of the crime." *Id.* Thus, the court held that "a single entry can support only one conviction of first degree burglary, even if multiple assaults occur." *Id.* at 325.

{41}    The *Fuentes* Court also cited other state court opinions that were in accord with its holding and which had burglary statutes similar to the burglary statutes in Colorado. *Id.* at 325. *See, e.g.*, *State v. DeWitt*, 101 P.3d 277, 285 (Mont. 2004) (holding that it was error for the district court not to dismiss one count of aggravated burglary because there was only one

13

unauthorized entry); *State v. Brooks*, 53 P.3d 1048, 1050 (Wash. Ct. App. 2002) (recognizing that it was improper to analogize burglary to robbery, making the number of victims the focus of the analysis, because the focus should be on the number of entries). The *Fuentes* Court acknowledged that the state was free to charge a defendant with assaultive crimes if the evidence supports such a charge, but that the state cannot do so under the aggravated burglary statute if there was only one unlawful entry. *Fuentes,* 258 P.3d at 325.

**{42}** The approach taken in these cases is persuasive and consistent with New Mexico jurisprudence. To summarize, the simple burglary statute in New Mexico provides, in relevant part, that "[b]urglary consists of the unauthorized entry of any . . . dwelling . . . with the intent to commit any felony or theft therein." Section § 30-16-3. The aggravated burglary statute encompasses the same elements as simple burglary but increases the punishment if the defendant "A. is armed with a deadly weapon; B. after entering, arms himself with a deadly weapon; [or] C. commits a battery upon any person while in such place . . . ." Section 30-16-4; *see State v. DeGraff*, 2006-NMSC-011, ¶ 28, 139 N.M. 211, 131 P.3d 61 (recognizing the implied "or" in the aggravated burglary statute, § 30-16-4). When there is only one entry into a dwelling, only one of these aggravating factors is needed to support punishing the burglary as a second-degree felony instead of a third-degree felony. *See* §§ 30-16-3, -4.

**{43}** In this case, there was only one unlawful entry with the intent to commit a felony therein, and thus there was only one burglary that could be enhanced to an aggravated burglary. Both Mr. and Mrs. Atencio testified that Swick entered their home only once. Swick's cousin also testified that he and Swick entered the home only once in order to steal a vehicle. The State attempted to justify the two charges of aggravated burglary based on battery by pointing to two victims and then attempted to justify the aggravated burglary because Swick "had a knife from the time he killed . . . Ogle." Although the facts that Swick battered the Atencios and that Swick was armed with a knife before the unauthorized entry support enhancing the burglary to an aggravated burglary, it is clear that the Legislature intended that only one subsection enhance the punishment for a single unauthorized entry. This approach is logical and consistent with the principles of double jeopardy because Swick was also convicted of two counts of armed robbery, NMSA 1978, § 30-16-2 (1973); two counts of aggravated battery with a deadly weapon, § 30-3-5(C); and two counts of attempted murder, §§ 30-2-1 & 30-28-1, for the same assaultive conduct that took place after the unlawful entry.

**{44}** Because Swick's convictions under three subsections of Section 30-16-4 violate the prohibition against double jeopardy, we remand to the trial court to vacate Swick's two convictions for aggravated burglary based on battery.

## II.    JURY INSTRUCTIONS

**{45}** At the close of the State's case, defense counsel tendered two different instructions to the trial court regarding Ogle's death, one for voluntary manslaughter as a result of

14

sufficient provocation, and, in the alternative, a self-defense instruction. The defense maintained that Ogle stabbed Swick before Swick stabbed Ogle. Detective Traxler and Officer Wiese both testified during trial that Swick's knife wound could have been defensive in nature. Defense counsel argued that this type of injury would cause fear in an ordinary person and that it made Swick fearful for his life. The State contended that Swick could not have been acting in self-defense resulting from fear and "be sufficiently provoked at the same time." The trial court refused to give an instruction on self-defense, but it did instruct the jury on voluntary manslaughter. However, the trial court gave the jury the second-degree murder instruction that applies when voluntary manslaughter is *not* a lesser-included offense, even though the trial court had determined that voluntary manslaughter was a lesser-included offense in this case. The instruction that was given to the jury, UJI 14-211 NMRA, omits the element of the statute that requires the State to prove beyond a reasonable doubt that the defendant did not act with sufficient provocation. Section 30-2-1(B). *Compare* UJI 14-210 NMRA *with* UJI 14-211. Neither party objected to this instruction.

{46}   Because this issue was not raised below, we will review for fundamental error, *State v. Sosa*, 1997-NMSC-032, ¶ 23, 123 N.M. 564, 943 P.2d 1017, "or if substantial justice has not been done." *State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (internal quotation marks and citation omitted). The exacting standard of review for reversal for fundamental error requires "the question of guilt [be] so doubtful that it would shock the conscience [of the court] to permit the verdict to stand." *Sosa*, 1997-NMSC-032, ¶ 24. With regard to jury instructions, fundamental error occurs when, because an erroneous instruction was given, a court has no way of knowing whether the conviction was or was not based on the lack of the essential element. *Osborne*, 111 N.M. at 662-63, 808 P.2d at 632-33.

**A.      THE TRIAL COURT ERRED IN ISSUING AN INSTRUCTION ON SECOND-DEGREE MURDER THAT OMITTED THE ESSENTIAL ELEMENT "WITHOUT SUFFICIENT PROVOCATION."**

{47}   The trial court gave the following jury instruction, based on UJI 14-211, for second-degree murder:

> For you to find the defendant, Michael Swick, guilty of second degree murder, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.      The defendant, Michael Swick, killed Alex Ogle;
>
> 2.      The defendant, Michael Swick knew that his acts created a strong probability of death or great bodily harm to Alex Ogle;
>
> 3.      This happened in New Mexico, on or about the 21st day of January, 2006.

*See* UJI 14-211.

**{48}**     The title of this jury instruction indicates that it is applicable when "voluntary manslaughter [*is*] *not* [a] lesser-included offense" of second-degree murder, *id.* (emphasis added), and its Use Note states that the instruction applies "only when second-degree murder is the lowest degree of homicide to be considered by the jury," *id.* Use Note 1.  When voluntary manslaughter is a lesser-included offense, an additional element is added to the instruction between elements 2 and 3 of UJI 14-211.  Swick points out that UJI 14-210, the instruction that *should have been* given to the jury, provides the following:

> For you to find the defendant Michael Swick guilty of second degree murder, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

> 1.     The defendant, Michael Swick, killed Alex Ogle;

> 2.     The defendant, Michael Swick, knew that his acts created a strong probability of death or great bodily harm to Alex Ogle;

> 3.     *The defendant, Michael Swick, did not act as a result of sufficient provocation*;

> 4.     This happened in New Mexico, on or about the 21ˢᵗ day of January, 2006.

*See* UJI 14-210.

**{49}**     Although the trial court incorrectly instructed the jury regarding second-degree murder, the trial court correctly instructed the jury regarding voluntary manslaughter with UJI 14-220.  Instruction 14-220 includes an explanation of the difference between second-degree murder and voluntary manslaughter, which is sufficient provocation.  The jury was also given UJI 14-222 NMRA, which defines "sufficient provocation."

**{50}**     The State contends that because the jury was instructed to consider the instructions as a whole, the voluntary manslaughter instruction and the instruction defining "sufficient provocation" provided the jury with enough guidance to cure the defect in the second-degree murder instruction.  Swick counters that notwithstanding the instructions regarding voluntary manslaughter, it is not valid to presume the jury understood that an element, which the State had the burden of proving beyond a reasonable doubt, was missing from the second-degree murder instruction.

**{51}**     Swick also asserts that the trial court's step-down instruction based on UJI 14-250 NMRA prevented the jury from moving on to voluntary manslaughter after reaching a

16

unanimous guilty verdict on second-degree murder without considering the missing element. UJI 14-250 requires the jury to first address the highest degree of the crime charged, which in this case is first-degree murder. If the jury had found Swick guilty of first-degree murder, their deliberations regarding murder would have ended, and the jury would have returned a verdict of guilty of first-degree murder. However, under the step-down instruction, if unable to agree that Swick was guilty of first-degree murder, the jury was to consider second-degree murder next, and if unable to agree that Swick was guilty of second-degree murder, the jury was to consider voluntary manslaughter. Because the jury in this case agreed that Swick was guilty of second-degree murder, defense counsel argues that, under the step-down instruction, the jury never would have reached either the voluntary manslaughter instruction or the instruction defining "sufficient provocation."

**{52}** The State disagrees that the step-down instruction prevented the jury from properly considering voluntary manslaughter. The State asserts that the procedural, nonsubstantive step-down instruction does not direct the jury to disregard any elements in the voluntary manslaughter instruction and concludes that "there is no reason to believe the jury did so." Finally, the State argues that evidence to convict Swick of second-degree murder was not so doubtful that it would shock the conscience of this Court to allow the second-degree murder conviction to stand. *See State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 ("The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputabl[e], or open to such question that it would shock the conscience to permit the conviction to stand."(internal quotation marks and citation omitted)).

**{53}** The Court of Appeals agreed with the State, relying on *Cunningham*, in which this Court held that a failure to include an essential element in the elements section of an instruction is not fundamental error if other instructions given to the jury adequately address the excluded element. *Swick*, 2010-NMCA-098, ¶¶ 7-10 (citing *Cunningham*, 2000-NMSC-009, ¶ 21). Among other claims, the defendant in *Cunningham* appealed his conviction of first-degree murder based on the trial court's issuance of an instruction that was missing an essential element. 2000-NMSC-009, ¶¶ 1, 8. The defendant argued that when a trial court instructs the jury on self-defense, the trial court must add the language "[t]he defendant did not act in self defense" to the elements section of the instruction for the homicide crime being charged. *Cunningham*, 2000-NMSC-009, ¶ 9 (internal quotation marks omitted). In *Cunningham*, the trial court failed to add either that language or any reference to unlawfulness or self-defense in the essential elements section of the instruction. *See id.* ¶¶ 8-9.

**{54}** However, the trial court in *Cunningham* did give a separate self-defense instruction that included both the three elements of self-defense and the following language: "The burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self defense. If you have a reasonable doubt as to whether the defendant acted in self defense you must find the defendant not guilty." *Id.* ¶ 7 n.2 (internal quotation marks omitted). The *Cunningham* Court reviewed for fundamental error rather than reversible error

because the issue was not preserved below by the defendant. *Id*. ¶¶ 10-11. We distinguished *Cunningham* from *State v. Parish*, 118 N.M. 39, 878 P.2d 988 (1994), which found that it was reversible error when an elements instruction omits a reference to self-defense or unlawfulness. *Cunningham*, 2000-NMSC-009, ¶¶ 16-17; *see also Parish*, 118 N.M. at 42, 878 P.2d at 991 (explaining that reversible error review only asks whether "a reasonable juror would have been confused or misdirected"). Unlike the instruction given in *Cunningham*, the self-defense instruction given in *Parish* failed to properly place the burden on the State to prove that the defendant did not act in self-defense. *Cunningham*, 2000-NMSC-009, ¶ 17. After explaining the difference between fundamental error standard of review and reversible error standard of review, we affirmed the defendant's first-degree murder conviction, reasoning that the defendant failed to meet the high burden of proving fundamental error, and that the instruction adequately placed the burden of disproving self-defense on the State. *Id*. ¶¶ 17, 20-21, 24.

**{55}** However, when the jury instructions have not informed the jury that the State had the burden to prove an essential element, such as unlawfulness or an absence of self-defense, convictions have been reversed for fundamental error. *State v. Armijo*, 1999-NMCA-087, ¶ 25, 127 N.M. 594, 985 P.2d 764. The controlling question, which we answer affirmatively in this case, is whether "without sufficient provocation" is an essential element of second-degree murder when the jury is instructed on voluntary manslaughter as a potential lesser-included offense.

**{56}** "In determining what is or is not an essential element of an offense, we begin with the language of the statute itself, seeking of course to give effect to the intent of the legislature." *State v. Green*, 116 N.M. 273, 276, 861 P.2d 954, 957 (1993) (internal quotation marks and citation omitted). The language of the second-degree murder statute provides, "Unless he is acting upon sufficient provocation, upon a sudden quarrel or in the heat of passion, a person who kills another human being without lawful justification or excuse commits murder in the second degree . . . ." Section 30-2-1(B). A plain reading of the statute indicates that "without sufficient provocation" is an essential element of the crime. *See Green,* 116 N.M. at 276, 861 P.2d at 957. Therefore, the State must prove beyond a reasonable doubt that the defendant acted without sufficient provocation.

**{57}** Unlike the other instructions given in *Cunningham* that placed the burden on the State to prove that the defendant did not act in self-defense, the instruction defining "sufficient provocation" in this case did not specify that it was the State's burden to prove that Swick acted without sufficient provocation. The instruction only provided:

> "Sufficient provocation" can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

UJI 14-222. Like unlawfulness, "without sufficient provocation" is an essential element, and it should have been included in the instruction on second-degree murder. Because this element was missing from the instruction, there was no way for the jury to know that the State had the burden of proving beyond a reasonable doubt that Swick acted without sufficient provocation in order to prove that he committed second-degree murder.

**{58}** Because we have no way of knowing whether the jury understood that it was the State's burden to prove that Swick acted without sufficient provocation, allowing the conviction to stand would "shock the conscience of this Court and constitute a clear miscarriage of justice." *Osborne*, 111 N.M. at 663, 808 P.2d at 633. Therefore, we reverse Swick's conviction for second-degree murder, and this case is remanded to the trial court for a new trial consistent with this opinion.

**B.     THE TRIAL COURT DID NOT ERR IN DENYING SWICK'S PROPOSED SELF-DEFENSE INSTRUCTION.**

**{59}** Swick also argues that the jury should have been instructed on self-defense because enough evidence was presented at trial to allow reasonable minds to differ on the issue of self-defense. Swick maintains that his trial attorney detailed all of the evidence that supported instructing the jury on self-defense. The State responds that, given the extent and severity of Ogle's injuries, reasonable minds could not differ regarding all of the elements of self-defense. The Court of Appeals held that Swick's response, which ultimately caused Ogle's death, "cannot be regarded as objectively reasonable" and affirmed the decision of the trial court not to give the instruction. *Swick*, 2010-NMCA-098, ¶ 18.

**{60}** "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. In order to warrant jury instructions on self-defense, evidence must be sufficient to allow reasonable minds to differ regarding all elements of the defense. *See State v. Jacob Gonzales*, 2007-NMSC-059, ¶ 19, 143 N.M. 25, 172 P.3d 162. "If any reasonable minds could differ, the instruction should be given." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170. An instruction on self-defense requires that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed." *Id.* ¶ 17 (internal quotation marks and citations omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s]." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (alteration in original) (internal quotation marks and citations omitted).

**{61}** The State asserts that Swick did not offer enough evidence to support a self-defense instruction, analogizing this case to *State v. Lopez*, 2000-NMSC-003, 128 N.M. 410, 993 P.2d 727. In *Lopez*, the defendant appealed his conviction for first-degree murder, claiming that the trial court erred in not giving the jury an instruction on self-defense. *Id.* ¶ 22. After a night of drinking and taking drugs with the victim, Lopez stabbed the victim multiple times

19

and crushed his skull with a rock. *Id*. ¶ 3. Lopez claimed that he murdered the victim after the victim drew a knife. *Id*. Lopez's story was corroborated by several witnesses, including one who testified that she saw Lopez after the murder and he had what could have been a stab wound on his cheek. *Id.* ¶ 24. Another witness testified that he also saw Lopez after the murder and he had a cut and a scar on his face. *Id*. We held that this was enough evidence to meet the first requirement because evidence of an appearance of immediate danger supports an inference of a defendant's fear. *Id*. ¶ 25.

**{62}** However, we went on to hold that there was not enough evidence of the second and third requirements to allow reasonable minds to differ when the defendant responded to the alleged attack by stabbing the victim fifty-four times. *Id*. ¶¶ 25-26. We concluded that this type of killing was more consistent with rage or hatred than with fear and that there was not sufficient evidence to support a finding that it was reasonable for Lopez to respond in such a manner. *Id*. ¶ 26.

**{63}** In this case, there is enough evidence to support the first element of self-defense. Like the defendant in *Lopez*, Swick supported the first requirement with evidence that he sustained a "serious, defensive-type stab wound to his hand that required medical attention." Moreover, Swick also offered the testimony of Officer Wiese and Detective Traxler that Swick told them Ogle was the person who stabbed him and that the wound on Swick's hand could possibly be defensive, as opposed to self-inflicted. Swick's cousin also testified that Swick told him Ogle stabbed him. Under *Lopez*, such evidence would be enough to support the first element of self-defense.

**{64}** However, Swick does not point to any evidence in the record that his fear motivated the killing, other than a request to draw such an inference. On the other hand, the State introduced evidence that would make such an inference appear to be unreasonable. Dr. Michelle Berry, who performed the autopsy on Ogle, testified that there were at least seven distinct stab wounds in the upper left area of the chest with the possibility of additional overlapping stab wounds in this area, a stab wound in the middle of the chest, one on the face, and one on the back. She also testified that there were multiple injuries to Ogle's face consistent with blunt force trauma that could have been caused by the 15-pound rock that was in evidence. This evidence, like the evidence of the victim's injuries in *Lopez*, does not support a reasonable inference that fear caused Swick to kill Ogle.

**{65}** Even assuming that Swick initially attacked Ogle out of fear, the evidence could not support a finding that Swick acted reasonably. Several cases hold that a defendant is not entitled to a self-defense instruction when the defendant's response to the threat was unreasonable. For example, in *State v. Martinez*, 95 N.M. 421, 423, 622 P.2d 1041, 1043 (1981), *holding limited on other grounds by Sells v. State*, 98 N.M. 786, 788, 653 P.2d 162, 164 (1982), we held that "if the defendant was in fact acting in self-defense, it would not have been necessary for him to shoot the victim through the arm and chest, wrap a cord around the victim's neck, and beat the victim [in] the head" until his skull was smashed. In contrast, in *State v. Branchal*, 101 N.M. 498, 503-04, 684 P.2d 1163, 1168-69 (Ct. App.

20

1984), the Court of Appeals held that a self-defense jury instruction was warranted when the defendant testified that she shot the victim once because she was afraid he would shoot her or one of her children. *Id.* at 501-02, 684 P.2d at 1166-67. Because we do not find evidence on which reasonable minds can differ as to the second and third elements of self-defense in Swick's case, we agree with the Court of Appeals that the trial court did not err in rejecting Swick's self-defense instruction.

### III. THE TRIAL COURT DID NOT ERR IN DENYING THE MOTION FOR MISTRIAL.

**{66}** During the second day of trial, Swick had an outburst in court where he abruptly stood up and stated, "I'm going to have to go somewhere, man. I can't handle this." This outburst occurred just as the trial court was recessing the trial. Court security officers had to restrain Swick in order to control him. Some jurors witnessed this incident.

**{67}** The next morning the trial court polled the jurors individually to determine what they saw and heard, and then asked them whether what they witnessed, if anything, would impact their ability to be fair and impartial. More than half of the fifteen jurors saw Swick's outburst or the security guards restraining him or both. Each juror indicated in turn that neither the outburst incident nor shackling Swick in the courtroom during the remainder of the trial would affect the juror's fairness and impartiality in deciding the case based on the evidence presented. The trial court proceeded with the trial and also ordered that Swick be bound and shackled for the remainder of the trial. Defense counsel moved for a mistrial, explaining that because many of the jurors had witnessed the outburst incident on the previous day and would now see Swick bound and shackled, Swick would be unfairly prejudiced. The trial court denied the motion without explanation. Swick's final argument is that the trial court erred in denying his motion for a mistrial following this incident.

**{68}** "A denial of a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Johnson*, 2010-NMSC-016, ¶ 49, 148 N.M. 50, 229 P.3d 523. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).

**{69}** Swick contends that, notwithstanding the voir dire conducted by the trial court, he was prejudiced because the jurors could not forget the incident and might have improperly used it as proof of a propensity for violence. The State responds that the trial court did not abuse its discretion because the trial court promptly dealt with the outburst to ensure that the jurors could be impartial after witnessing the incident. The State also emphasizes that a defendant should not be able to benefit from his or her own misbehavior. To support its position, the State cites *State v. Paul*, 83 N.M. 527, 529, 494 P.2d 189, 191 (Ct. App. 1972), in which the Court of Appeals held that a defendant should "not . . . be permitted to gain from his outbursts."

21

**{70}** The trial court decided to have Swick bound and shackled because it concluded that it would be the best way to handle the situation consistent with the trial court's firmly held belief in having the criminal defendant present at trial. The trial court's precautions themselves, emphasizing that restraining Swick during the trial did not indicate his guilt or innocence and asking each juror whether Swick's appearance in shackles during the trial would affect that juror's ability to remain impartial, reflected the court's impartiality in this case. The trial court did not abuse its discretion in denying the motion for mistrial, and thus we affirm the Court of Appeals' holding.

## IV. CONCLUSION

**{71}** Consistent with this opinion, we (1) remand to the trial court to vacate Swick's two convictions for aggravated battery and his two convictions for aggravated burglary based on battery; (2) affirm the rulings of the trial court regarding the self-defense jury instruction and the motion for a mistrial; and (3) remand to the trial court for a new trial on the second-degree murder conviction.

**{72} IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index**

**APPEAL AND ERROR**
Remand
Standard of Review

**CONSTITUTIONAL LAW**
Double Jeopardy

**CRIMINAL LAW**
Aggravating or Mitigating Circumstances
Attempt
Battery
Elements of Offense
Homicide
Murder
Self-defense
Voluntary Manslaughter
Weapons Offences

**CRIMINAL PROCEDURE**
Conduct of Defendant
Double Jeopardy
Jury Instructions
Mistrial
New Trial
Self-defense

**JURY INSTRUCTIONS**
Criminal Jury Instructions
Failure to Give or Request
Improper Jury Instructions