# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: May 25, 2016

**NO. 34,303**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**JAMES JOSEPH RAMIREZ,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Judge.**

{1}    A jury found Defendant James Joseph Ramirez guilty of several crimes arising from a home invasion where a child victim was home alone. Defendant asserts on appeal that (1) multiple punishments violate his right to be free from double jeopardy, (2) there was insufficient evidence to support his conviction for child endangerment, and (3) the restraint used to convict him of kidnapping was incidental to the commission of another crime. We affirm in all respects.

**BACKGROUND**

{2}    The facts are not in dispute. Victim was a child—fifteen at the time of the incident—who was home alone one night while his older brothers worked and his parents attended a Christmas party. He heard a knock at the door and answered to find a man wearing a hooded sweatshirt with the hood pulled low over his eyes. The identity of the hooded man would later be the only real concern at trial, but for our purposes on appeal, it is uncontested that he was Defendant.

{3}    Defendant asked if Victim's parents were home. Victim, who was naturally suspicious, lied and responded that they were. Defendant then attempted to force his way inside, and the Victim attempted to block the doorway until Defendant pulled a revolver from his waist, prompting Victim to retreat into the house.

{4} Victim ran to the living room, realized his mother had blocked the back door with laundry, so he stopped and got on his knees. Defendant, who had followed Victim inside, picked him up by his shirt and pointed the gun up and down his body. He ordered Victim to lock the door and then asked if "Alyssa" was home. Victim responded that he did not know anyone by that name. Defendant then followed Victim from room to room, forcing him at gunpoint to open each door so Defendant could look inside. Having apparently concluded that there was, in fact, no "Alyssa" at the residence, Defendant remarked, "shit, wrong house," and left.

**DISCUSSION**

**Sufficiency of the Evidence**

{5} This is a double jeopardy case at its core, but we will begin by disposing of two cursory arguments that (1) there is insufficient evidence of child endangerment because the State did not prove Defendant knew Victim was a child, and (2) the restraint used to kidnap Victim was incidental to Defendant's conviction for child endangerment. When the sufficiency of the evidence is challenged, "we must view the evidence in the light most favorable to the conviction." *State v. Wade*, 1983-NMCA-084, ¶ 11, 100 N.M. 152, 667 P.2d 459.

{6} To be convicted of child endangerment under NMSA 1978, Section 30-6-1(D)(1) (2009), a defendant must act "with reckless disregard in relation to the safety

2

or health of [a child] specifically." *State v. Gonzales*, 2011-NMCA-081, ¶ 25, 150 N.M. 494, 263 P.3d 271. The standard is not entirely clear; but even assuming—for the purposes of this argument—that the State was required to prove that Defendant was subjectively aware that Victim was a child, the evidence is still sufficient to support the conviction.

{7} Victim was fifteen years old when Defendant knocked at his door and seventeen when he testified before the jury. He testified that Defendant's immediate question when the two met face-to-face was "are your parents home?" That alone is sufficient evidence for the jury to infer Defendant's awareness that the person he would later hold at gunpoint was a child. *See State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (stating that the appellate courts "view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict"); *State v. Montoya*, 1966-NMSC-224, ¶ 10, 77 N.M. 129, 419 P.2d 970 ("Knowledge, like intent, is personal in its nature and may not be susceptible of proof by direct evidence. It may, however, be inferred from occurrences and circumstances.").

{8} Defendant next admits—somewhat paradoxically—that he committed child endangerment but asserts that we must vacate his conviction for kidnapping because the Legislature did not intend kidnapping to be predicated on restraint incidental to

3

the offense he committed. Defendant characterizes this as an issue of statutory interpretation, for which our review is de novo. *See State v. Trujillo*, 2012-NMCA-112, ¶ 7, 289 P.3d 238 ("Whether the Legislature intended restraint during an aggravated battery to be charged as kidnapping is a question of statutory interpretation."), *cert. quashed*, 2015-NMCERT-003, 346 P.3d 1163. But even assuming that Defendant's interpretation of the statutes at issue is correct and that the limitations on kidnapping in *Trujillo* (which was an aggravated battery case) similarly apply in a child abuse case, the testimony, as a matter of fact, does not support the notion that Victim's restraint was incidental to child endangerment. *See id.* ¶ 6 (viewing the facts "in the light most favorable to the conviction"); *see also State v. Sotelo*, 2013-NMCA-028, ¶¶ 29-30, 296 P.3d 1232 (applying a sufficiency of the evidence standard to the question of whether restraint is incidental to a separate crime).

{9}     In *Trujillo*, we held that the restraint needed to effect a minutes-long battery—"a momentary grab in the middle of a fight"—was not conduct that was contemplated by the kidnapping statute because it was "merely incidental" to the battery. 2012-NMCA-112, ¶¶ 6, 8. In *Trujillo*, we identified three tests employed in other jurisdictions to determine whether restraint is incidental to another offense but ultimately concluded that "the overarching question . . . is whether the restraint or

4

movement increases the culpability of the defendant over and above his culpability for the other crime." *Id.* ¶ 6.

{10} Victim testified that he ran to the living room and stopped and got on his knees before Defendant entered, and that Defendant picked him up by his shirt and pointed the gun up and down his body. The State argued to the jury that this particular conduct was the basis for the child endangerment charge. Defendant then, according to Victim's testimony, ordered Victim to lock the door and forced him at gunpoint to assist in a futile room-to-room search for an individual not present in the home. This search, "with [the] gun pressed to the back of [Victim's] head," was the factual basis in the State's closing argument for the kidnapping charge.

{11} We conclude that the prolonged search for "Alyssa," in which Victim was held to service to open each door in the home, turn on each light, and allow Defendant to explore each empty room, increased Defendant's culpability over and above his culpability in endangering Victim by pointing the gun at him in the first instance. Thus, the restraint in this case is not incidental to child endangerment under the standards enunciated in *Trujillo*. We affirm Defendant's conviction for kidnapping.

**Double Jeopardy**

{12} Defendant argues that his convictions for aggravated burglary and aggravated assault (both with a deadly weapon) are subsumed into his conviction for child

5

endangerment. In the event his other arguments are unsuccessful, Defendant argues that burglary was improperly aggravated because the same firearm was used to support his conviction for aggravated assault. These contentions all invoke constitutional protections against double jeopardy.

{13} The right to be free from double jeopardy protects against both successive prosecutions and multiple punishments for the same offense. *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223. There are two types of multiple punishment cases: (1) unit of prosecution cases, in which an individual is convicted of multiple violations of the same criminal statute; and (2) double-description cases, in which a single act results in multiple convictions under different statutes. *Id.* ¶¶ 8-9. Defendant's arguments, involving separate statutes, raise only double-description concerns.

{14} Our courts apply a two-step inquiry to double-description claims. *Id.* ¶ 25. First, we analyze the factual question, "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes[,]" and if so, we consider the legal question, "whether the [L]egislature intended to create separately punishable offenses." *Id.* "If it reasonably can be said that the conduct is unitary, then [the appellate courts] must move to the second part of the inquiry. Otherwise, if the conduct is separate and distinct, [the] inquiry is at an end." *Id.* ¶ 28.

## A.        Aggravated Burglary and Child Endangerment

**{15}**     Defendant first argues that he cannot be punished for both aggravated burglary (with a deadly weapon) and child endangerment. That argument fails the unitary conduct portion of the analysis. "[W]e will find that conduct is not unitary when the illegal acts are separated by sufficient indicia of distinctness." *State v. Mora*, 2003-NMCA-072, ¶ 18, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation omitted). Relevant considerations include the quality and nature of the individual acts, their objectives and results, and their separation in time or physical distance. *Id.* As a general rule, conduct is not unitary when there is "an identifiable point at which one of the charged crimes ha[s] been completed and the other not yet committed." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61.

**{16}**     The jury was instructed to convict Defendant of aggravated burglary if it found that he "entered a dwelling without authorization" and "with the intent to commit an aggravated assault once inside" while "armed with a handgun." The offense of burglary is complete upon unauthorized entry with the requisite intent. *State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 41, 285 P.3d 622. "Accordingly, the crime of aggravated burglary was completed as soon as Defendant, with the requisite intent, gained entry to Victim's [home] while armed with a [handgun]." *State v. Montoya*, 2011-NMCA-074, ¶ 34, 150 N.M. 415, 259 P.3d 820.

{17} The State's theory for child endangerment, evident in its closing argument, was that Defendant "forc[ed his] way into a child's home" and "plac[ed] a gun to [his] head, showing . . . active disregard for that child's health." Because the crime of aggravated burglary was complete upon entry and before Defendant endangered Victim by pointing the gun to his head, the conduct is not unitary, and multiple punishments are authorized. *See, e.g.*, *State v. Bernal*, 2006-NMSC-050, ¶ 11, 140 N.M. 644, 146 P.3d 289; *DeGraff*, 2006-NMSC-011, ¶ 27; *see also Swafford*, 1991-NMSC-043, ¶ 28 ("[I]f the conduct is separate and distinct, [the] inquiry is at an end.").

**B.     Aggravated Assault and Child Endangerment**

{18} Defendant next argues that his conviction for aggravated assault is subsumed into his child endangerment conviction. Since the parties do not dispute that the conduct underlying these offenses is unitary, we limit our analysis to legislative intent. "Determinations of legislative intent, like double jeopardy, present issues of law that are reviewed de novo, with the ultimate goal of such review to be facilitating and promoting the [L]egislature's accomplishment of its purpose." *State v. Montoya*, 2013-NMSC-020, ¶ 29, 306 P.3d 426 (alterations, internal quotation marks, and citation omitted). When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from

*Blockburger v. United States*, 284 U.S. 299 (1932), to ensure that each provision requires proof of a fact that the other does not. *Swafford*, 1991-NMSC-043, ¶¶ 10, 30. When applying *Blockburger* to statutes that are vague and unspecific or written with many alternatives, we look to the charging documents and jury instructions to identify the specific criminal causes of action for which the defendant was convicted. *State v. Gutierrez*, 2011-NMSC-024, ¶¶ 53, 58, 150 N.M. 232, 258 P.3d 1024.

{19}    Aggravated assault is committed when one "assault[s] . . . another with a deadly weapon[.]" NMSA 1978, § 30-3-2(A) (1963). Assault, as charged in this case, is defined in NMSA 1978, Section 30-3-1(B) (1963), as "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery[.]" The specific menacing conduct charged in the jury instruction was that Defendant "pointed a gun at [Victim.]"

{20}    Section 30-6-1(D)(1) makes it a crime to recklessly cause or permit a child to be "placed in a situation that may endanger the child's life or health[.]" *State v. Consaul*, 2014-NMSC-030, ¶¶ 29, 37-38, 332 P.3d 850. Neither the indictment nor the jury instructions shed any light on the State's trial theory for the child endangerment charge, but in its closing argument, the State made it clear that Victim was endangered by the gun: "We know what firearms do," the State told the jury. "We

know what they're intended to do. They're intended to wound and kill. Clearly, this places [Victim] in danger of that."

{21} Defendant contends that since the State's theory was that child endangerment and aggravated assault were both committed when Defendant pointed a gun at Victim, he is twice being punished for "one act of threatening a child in violation of double jeopardy" according to the modified *Blockburger* analysis that our Supreme Court adopted in *Gutierrez*, 2011-NMSC-024, ¶¶ 58-59. *Gutierrez* all but overruled *State v. McGruder*, 1997-NMSC-023, 123 N.M. 302, 940 P.2d 150, *abrogated on other grounds by State v. Chavez*, 2009-NMSC-035, ¶ 16, 146 N.M. 434, 211 P.3d 891, to hold that the only essential element of an offense prohibiting the unlawful taking of a motor vehicle was logically subsumed within the "anything of value" element of the robbery statute because the jury in that case was charged to find that the taking of a 1996 Oldsmobile satisfied both offenses. *Gutierrez*, 2011-NMSC-024, ¶¶ 53, 58-59. Specifically, the Court refused to apply *Blockburger* to the statutes in the abstract, opting instead to look to the jury instructions to identify the case-specific meaning of robbery's generic statutory term, "anything of value." *Gutierrez*, 2011-NMSC-024, ¶ 59. Because the jury instruction for robbery in *Gutierrez* expressly required proof that a 1996 Oldsmobile was taken, the unlawful taking of a motor

10

vehicle was a lesser included offense of robbery and punishment could not be had for both the greater and lesser offense. *Id.* ¶¶ 58-60.

{22} We do not believe that *Gutierrez* stands for a return to the fact-based, ad hoc double jeopardy adjudications that were rejected in *Swafford*. *See Gutierrez*, 2011-NMSC-024, ¶ 78 (Bosson, J., specially concurring) (cautioning against looking beyond the indictment and jury instructions in a *Blockburger* analysis). Nor do we consider it an invitation to carelessly overturn convictions for offenses that involve some overlapping conduct or share a single element. *See State v. Swick*, 2012-NMSC-018, ¶ 21, 279 P.3d 747 (stating that we "evaluate legislative intent by considering the [s]tate's legal theory independent of the particular facts of the case"). The modified *Blockburger* approach is nothing more than a test to determine whether the state's theory for one crime, as charged to the jury, is logically subsumed (i.e., a lesser included offense) within the state's theory for a separate crime. *Gutierrez*, 2011-NMSC-024, ¶¶ 58-60. To say, as Defendant does, that he is being twice punished for the same act of pointing a gun at Victim is to merely restate the test for unitary conduct, which has already been established before any analysis of the statutes under *Blockburger* can begin. *See Swafford*, 1991-NMSC-043, ¶ 25.

{23} Although the act of pointing the gun at Victim is a shared element of both offenses as charged, it does not follow that one offense is subsumed within the other.

11

Assault, under Section 30-3-1(B), which requires only general criminal intent, can always be committed whether or not one acts with the reckless disregard required to commit child endangerment. *See State v. Manus*, 1979-NMSC-035, ¶¶ 12, 14, 93 N.M. 95, 597 P.2d 280 (stating that "general criminal intent is required to support a conviction for aggravated assault"), *overruled on other grounds by Sells v. State*, 1982-NMSC-125, ¶¶ 9-10, 98 N.M. 786, 653 P.2d 162. And one can always offend Section 30-6-1(D)(1) without causing reasonable apprehension of an immediate battery. Thus, the jury in this case could have concluded that Defendant did not act recklessly and yet still convicted him of aggravated assault; or the jury could have found that Victim's fear was not reasonable and still convicted Defendant of child endangerment. Because, unlike the situation in *Gutierrez*, it was possible to convict Defendant of either offense without convicting him of the other, neither offense, as a matter of law and a matter of logic, is a lesser offense subsumed within the other, and the modified *Blockburger* test will not foreclose multiple punishments.

{24} When two statutes survive *Blockburger*, we examine "other indicia of legislative intent." *Swafford*, 1991-NMSC-043, ¶ 31. We look to "the language, history, and subject of the statutes, and [the appellate courts] must identify the particular evil sought to be addressed by each offense." *Montoya*, 2013-NMSC-020, ¶ 32 (internal quotation marks and citation omitted).

12

> Statutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments. . . . If several statutes are not only usually violated together, but also seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution.

*Swafford*, 1991-NMSC-043, ¶ 32.

{25}    We begin with the observation that children are often placed in danger by conduct that also happens to violate a separate criminal statute. *See, e.g.*, *Graham*, 2005-NMSC-004, ¶ 12 (involving the possession of marijuana, accessible to a child); *State v. Orquiz*, 2012-NMCA-080, ¶ 1, 284 P.3d 418 (involving driving while intoxicated with a child in the vehicle); *State v. Clemonts*, 2006-NMCA-031, ¶¶ 11-12, 139 N.M. 147, 130 P.3d 208 (involving the commission of various traffic offenses with a child in the vehicle). Violation of a separate statute is actually a factor that we consider in determining whether the gravity and likelihood of potential harm is sufficient to support a conviction for child endangerment. *Chavez*, 2009-NMSC-035, ¶ 25 ("[S]uch legislative declaration of harm may be useful, though not dispositive, to an endangerment analysis when the Legislature has defined the act as a threat to public health, safety, and welfare.").

{26}    The defendant in *Graham* was convicted of child endangerment *based on* the possession of illegal drugs when police found crack cocaine in the defendant's home and a marijuana bud in a child's crib in the master bedroom. 2005-NMSC-004, ¶ 2;

13

*see id.* ¶ 32 (Bosson, J., dissenting). The Legislature's designation of marijuana as a Schedule I controlled substance was critical in upholding the endangerment conviction. *Id.* ¶ 12. Similarly, the defendant in *Orquiz* was "properly convicted" of both driving while intoxicated and child endangerment "based upon the presence of a child in the moving vehicle that [the d]efendant drove." 2012-NMCA-080, ¶¶ 1, 11-12 (relying on a line of prior driving while intoxicated/child abuse cases). In *Orquiz*, we implicitly recognized that two interests were being infringed by the defendant's conduct: "[N]ot only [did] the intoxicated driver threaten the safety of the general public, but the driver also pose[d] an immediate, substantial, and foreseeable threat to a specific member of the general public[,] . . . a child." *Id.* ¶ 15.

{27} There is a common sense principle supporting multiple punishments under these circumstances. Society recognizes that those who endanger children in the process of committing certain crimes are simply more culpable than those who commit the same crimes without putting a child at risk. The Legislature has expressed this interest by providing for expanded protection of children in Section 30-6-1(D)(1) and throughout the Criminal Code. For example, the crime of child abuse resulting in death is a first degree felony, Section 30-6-1(F), authorizing a basic sentence of life imprisonment, *see* NMSA 1978, § 31-18-15(A)(1) (2007, amended 2016), while the crime of causing death to an adult with a similar mental state is a fourth degree

14

felony, NMSA 1978, § 30-2-3(B) (1994) (involuntary manslaughter), providing for a penalty of only eighteen months imprisonment, *see* § 31-18-15(A)(10). And child endangerment (not resulting in death) is a third degree felony, *see* § 30-6-1(D)(1), (E), subject to a penalty of three years imprisonment, *see* § 31-18-15(A)(9), while there is no comparable crime for endangering an adult. By enacting these offenses and establishing enhanced penalties for their commission, the Legislature has expressed a "compelling public interest in protecting defenseless children." *Graham*, 2005-NMSC-004, ¶ 9 (internal quotation marks and citation omitted). This is all to say that the social evil addressed by the child endangerment statute is the inchoate but "truly significant risk of serious harm to children[,]" *Chavez*, 2009-NMSC-035, ¶ 22, which is an interest that has sometimes justified a greater degree of punishment than that imposed for identical criminal conduct that does not create such a risk. *See, e.g.*, *Graham*, 2005-NMSC-004, ¶ 12; *Orquiz*, 2012-NMCA-080, ¶ 1.

{28} On the other hand, "[t]he aggravated assault statute is aimed at deterring aggression against other people in which the use of deadly weapons is involved." *State v. Rodriguez*, 1992-NMCA-035, ¶ 17, 113 N.M. 767, 833 P.2d 244. The aggression specifically criminalized in Section 30-3-1(B) is conduct that causes mental harm to the victim—i.e., puts the victim in fear, even when that fear is not accompanied by actual physical harm, *see State v. Roper*, 2001-NMCA-093, ¶ 12, 131

15

N.M. 189, 34 P.3d 133, or even any risk of physical harm. *See* § 30-3-1(B) (requiring only a reasonable belief that a battery is imminent).

{29} We conclude that there is little overlap between the social policies addressed by the child abuse and assault statutes. *See Swafford*, 1991-NMSC-043, ¶ 32 ("Statutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments."). We also conclude that the two statutes are not ordinarily violated together. *See Swick*, 2012-NMSC-018, ¶ 13 ("Legislative intent may be gleaned [by] . . . determining whether the statutes are usually violated together[.]" (internal quotation marks and citation omitted)). Reasonable fear can be imposed by threat to a child victim when there is no risk of actual, physical harm to a child. And the life and health of that child can be recklessly put at substantial risk whether or not the defendant makes a fear-inducing threat. But in unusual cases where a defendant acts in a manner that infringes on both of those social interests, multiple punishments for aggravated assault and child endangerment do not violate the right to be free from double jeopardy.

{30} This case is a good example of the policies at issue. This was a life-threatening and harrowing experience for Victim—a child. He testified that he thought he was going to be shot from the moment he saw the gun. His mother later found him at the neighbors' house, crying and scared, and the family ultimately moved out of their

home because they no longer felt comfortable there. Because the law separately punishes the distinct evils evident here, we affirm Defendant's convictions for both offenses.

**C.    Aggravated Burglary and Aggravated Assault**

{31}    Defendant's final argument is that the same firearm was used to aggravate both burglary and assault, thereby offending principles of double jeopardy. This argument is unpersuasive for a number of reasons, the most obvious being that we have already held that the aggravated burglary was complete before the gun was pointed at Victim in the living room, which was the basis for the child endangerment and aggravated assault convictions. Therefore, the conduct underlying the two offenses is not unitary, *Bernal*, 2006-NMSC-050, ¶ 11; *DeGraff*, 2006-NMSC-011, ¶ 27, and our double jeopardy inquiry "is at an end." *Swafford*, 1991-NMSC-043, ¶ 28.

**CONCLUSION**

{32}    Defendant's convictions are affirmed.

{33}    **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

17

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**M. MONICA ZAMORA, Judge**