# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 25, 2017

**NO. 33,731**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANNETTE C. FUSCHINI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

{1}     Defendant Annette C. Fuschini was convicted of involuntary manslaughter and aggravated driving while intoxicated (DWI) after she ran over her fiancé with a vehicle, which resulted in his death. On appeal, Defendant argues that her convictions violate the double jeopardy clause of the Fifth Amendment of the United States Constitution. We hold that double jeopardy was not violated and thus affirm Defendant's convictions.

**BACKGROUND**

{2}     Defendant and her fiancé, Carlos Nevarez, were celebrating his birthday at their friends' house. Defendant and Nevarez had been drinking at their home, and they continued to drink at the celebration. When they left their friends' house, Defendant was driving their Silverado truck, and Nevarez was in the passenger seat.

{3}     As they were driving home, Defendant and Nevarez were having an argument, Defendant suddenly stopped the truck on the side of the road, and Nevarez got out. Nevarez yelled at Defendant to leave and walked away onto the curb. Defendant then drove the truck over the curb and hit Nevarez, pulling him underneath the wheels. Nevarez died from his injuries.

{4} A grand jury indictment charged Defendant with the deliberate and intentional killing of Nevarez in violation of NMSA 1978, Section 30-2-1(A)(1) (1994), and aggravated DWI for causing bodily injury to Nevarez in violation of NMSA 1978, Section 66-8-102 (2010, amended 2016). At trial, Defendant requested and the district court submitted instructions on second degree murder and involuntary manslaughter as lesser included offenses to the first degree murder charge. The jury found Defendant guilty of involuntary manslaughter and aggravated DWI.

{5} Prior to sentencing, Defendant submitted a sentencing memorandum to the district court opposing the State's request to impose consecutive sentences. Defendant asserted that, under the facts and instructions given to the jury, imposing a sentence for both convictions would result in multiple punishments for the same offense in violation of the Fifth Amendment. In support of her argument, Defendant referred the district court to *State v. Montoya*, 2013-NMSC-020, 306 P.3d 426; *State v. Swick*, 2012-NMSC-018, 279 P.3d 747; and *Swafford v. State*, 1991-NMSC-043, 112 N.M. 3, 810 P.2d 1223. The State responded that in its view there was no double jeopardy prohibition to imposing a sentence for each conviction to be served consecutively. The district court agreed. Defendant appeals.

**DISCUSSION**

{6}      Defendant's sole argument on appeal is that she has been convicted and sentenced in violation of her right to be free from double jeopardy under the Fifth Amendment to the United States Constitution. Double jeopardy challenges involve constitutional questions of law, which we review de novo. *State v. Melendrez*, 2014-NMCA-062, ¶ 5, 326 P.3d 1126. The prohibition against double jeopardy "functions in part to protect a criminal defendant against multiple punishments for the same offense." *Swick*, 2012-NMSC-018, ¶ 10 (internal quotation marks and citation omitted). Double jeopardy multiple-punishment cases are divided into two classifications: (1) multiple convictions under a single statute are "unit of prosecution" cases, and (2) multiple convictions under separate statutes resulting from the same conduct are "double description" cases. *Id.* This is a double description case because Defendant argues that the same conduct resulted in two convictions under separate statutes.

{7}      In analyzing a double description multiple-punishment claim, we first determine whether the underlying conduct for the offenses is unitary. *Swafford*, 1991-NMSC-043, ¶ 25. The parties do not dispute that the conduct in this case, Defendant running over and killing Nevarez, was unitary. When the conduct is unitary, we then review "the statutes at issue to determine whether the [L]egislature intended to create

3

separately punishable offenses." *Id.*; *see Swick*, 2012-NMSC-018, ¶ 20 (noting that because the prosecution did not challenge the defendant's assertion that the conduct was unitary, the Court proceeded to determine whether the Legislature intended multiple punishments for that conduct). Multiple punishments for unitary conduct are constitutionally prohibited when the Legislature did not intend to create separately punishable offenses. *See Swick*, 2012-NMSC-018, ¶¶ 24, 27 (concluding that, under the prosecution's theory of the case, the Legislature did not intend to create separately punishable offenses and punishment could not be had for both convictions without violating double jeopardy).

{8}     We begin by determining whether there is an explicit authorization for multiple punishments. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 50, 150 N.M. 232, 258 P.3d 1024 ("Where the [L]egislature has explicitly authorized multiple punishment the judicial inquiry is at an end, and multiple punishment is authorized and proper." (alterations, internal quotation marks, and citation omitted)). Here, neither party argues and we fail to find an express legislative statement that multiple punishments may be imposed for both involuntary manslaughter and aggravated DWI that results in the death of one victim. In the absence of an express statement of legislative intent, we apply "the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to ensure that each provision requires proof of a fact that the

4

other does not. When applying *Blockburger* to statutes that are vague and unspecific or written with many alternatives, we look to the charging documents and jury instructions to identify the specific criminal causes of action for which the defendant was convicted." *State v. Ramirez*, 2016-NMCA-072, ¶ 18, 387 P.3d 266 (citation omitted).

{9} "If that [inquiry] establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 1991-NMSC-043, ¶ 30. "If one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending the principles of double jeopardy. That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent." *State v. Silvas*, 2015-NMSC-006, ¶¶ 12-13, 343 P.3d 616 (internal quotation marks and citations omitted). In analyzing other indicia of legislative intent, we look to " 'the language, history, and subject of the statutes, and we must identify the particular evil sought to be addressed by each offense.' " *Id.* ¶ 13 (quoting *Montoya*, 2013-NMSC-020, ¶ 32). When these tools are used, if doubt still remains regarding legislative intent, the ambiguity must be resolved in favor of a defendant under the rule of lenity. *See Montoya*, 2013-NMSC-020, ¶ 51 (citing *Swick*, 2012-NMSC-018, ¶ 30).

5

{10} In this case, the parties focused on the jury instructions in their modified *Blockburger* analyses. The jury instruction in this case for involuntary manslaughter stated the following elements: Defendant ran over Nevarez with a vehicle, she should have known of the danger involved in her actions, she acted with a willful disregard for the safety of others, and her act caused the death of Nevarez. The jury instruction in this case for aggravated DWI stated the following elements: when operating a motor vehicle, Defendant "was under the influence of intoxicating liquor, that is, as a result of drinking such liquor . . . [D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public"; and "[D]efendant caused the death of . . . Nevarez[.]"

{11} On appeal, Defendant concedes that proof of each crime under the jury instructions required something different. Involuntary manslaughter required a finding that Defendant willfully disregarded the safety of others, while aggravated DWI required a finding that she was intoxicated to the point where she could not safely handle the vehicle she was driving. Defendant, therefore, concedes that the modified *Blockburger* analysis favors the State. She attempts to overcome the presumption that the Legislature intended multiple punishments by relying on "other indicia of legislative intent" to support her argument that her convictions violate

6

double jeopardy. Without looking to the language, history, or subject of the statutes and relying on *State v. Santillanes*, 2001-NMSC-018, ¶ 5, 130 N.M. 464, 27 P.3d 456, for the proposition that "[i]t is the death of another that the Legislature intended to punish, not the manner in which it was accomplished[,]" she argues that the Legislature did not intend that she be punished for aggravated DWI and involuntary manslaughter because the result is that she is being punished twice for causing one death.

{12}     We are not convinced that Defendant's "one death" rationale shows an indicia of legislative intent sufficient to overcome the presumption that the Legislature intended multiple punishments in this case. While we agree that, in general, a defendant cannot be convicted under multiple homicide statutes for causing a single death, death is not a factor in this case. Aggravated DWI is not a homicide statute. *See* § 66-8-102(D)(2) (establishing that aggravated DWI consists of "causing bodily injury to a human being as a result of the unlawful operation of a motor vehicle while driving under the influence of intoxicating liquor or drugs"). The aggravated DWI statute targets DWI that results in "bodily injury." *Id*. By express definition, " 'bodily injury' means an injury to a person that is not likely to cause death or great bodily harm to the person, but does cause painful temporary disfigurement or temporary loss

7

or impairment of the functions of any member or organ of the person's body[.]" Section 66-8-102(U)(1) (2010) (current version at Section 66-8-102(V)(1) (2016)).

{13} Although neither party points out the error of including death as an element in the aggravated DWI instruction, the fact that the district court erred in that regard does not logically or rationally give rise to a double jeopardy issue based on the "one death" rationale. *Santillanes*, cited by Defendant, is distinguishable from the present case. The statutes in *Santillanes*, which were vehicular homicide and child abuse resulting in death, are both homicide statutes. 2001-NMSC-018, ¶ 1. Similarly, other cases relying on the "one death" rationale implicated homicide statutes. *See Montoya*, 2013-NMSC-020, ¶¶ 30, 54 (addressing convictions for voluntary manslaughter and shooting at a motor vehicle resulting in death for the death of a single victim); *State v. Cooper*, 1997-NMSC-058, ¶ 53, 124 N.M. 277, 949 P.2d 660 (addressing convictions for felony murder and second degree murder for the death of a single victim). Aggravated DWI is patently not a homicide statute.

{14} Absent the "one death" rationale, Defendant provides no indicia of legislative intent to overcome the presumption that the Legislature intended multiple punishments. Because we are satisfied that the Legislature intended multiple punishments, we need not consider Defendant's rule of lenity argument, which we would consider only if we first determined that insurmountable ambiguity remained

8

after analyzing legislative intent under *Blockburger* and considering other indicia of legislative intent. *See Santillanes*, 2001-NMSC-018, ¶ 34 ("In deciding whether the Legislature intends to create separately punishable offenses, the rule of lenity dictates that, if insurmountable ambiguity remains after applying the *Blockburger* test and after resorting to traditional indicia of legislative intent, it is to be presumed the Legislature did not intend pyramiding punishments for the same offense." (alteration, internal quotation marks, and citation omitted)). We therefore conclude that the Legislature intended multiple punishments, and we hold that there is no double jeopardy violation.

**CONCLUSION**

{15}	For the foregoing reasons, we affirm Defendant's convictions.

{16}	**IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**


**I CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


**MICHAEL E. VIGIL, Judge (dissenting).**

9

**VIGIL, Judge (dissenting).**

{17} Defendant was convicted and sentenced twice for the homicide of one person by a single act of DWI, and the majority concludes this does not violate the constitutional prohibition against double jeopardy. I respectfully disagree and therefore dissent. In my opinion, the majority fails to properly apply the modified *Blockburger* test mandated by our Supreme Court, and therefore arrives at an incorrect, unconstitutional result.

{18} The two-part test used to analyze a double description multiple punishment case is well settled. We first determine whether the underlying conduct for the offenses is unitary. *Swafford*, 1991-NMSC-043, ¶ 25. If the conduct is not unitary, the analysis ends because there is no double jeopardy violation. *Id.* If the conduct is unitary, we review "the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Id.* When a defendant engages in unitary conduct violating two statutes and the Legislature did not intend to create separately punishable offenses, multiple punishments for the unitary conduct are constitutionally prohibited. *Id.*

**A.    Unitary Conduct**

{19} This aspect of the test is to determine whether the same conduct violated two statutes. *Id.* "Conduct is unitary when not sufficiently separated by time or place, and

the object and result or quality and nature of the acts cannot be distinguished." *Silvas*, 2015-NMSC-006, ¶ 10. Here, it is undisputed that Defendant engaged in a single act of driving over Nevarez while DWI and that this single act resulted in Defendant's two convictions under separate statutes. I agree with the majority that the conduct here was unitary. I therefore proceed to the next step of the analysis. *See Swick*, 2012-NMSC-018, ¶ 20.

**B.     Legislative Intent**

{20}     "Where the [L]egislature has explicitly authorized multiple punishment the judicial inquiry is at an end, and multiple punishment is authorized and proper." *Gutierrez*, 2011-NMSC-024, ¶ 50 (alterations, internal quotation marks, and citation omitted). I therefore first determine whether the Legislature intended multiple punishments to be imposed for Defendant's unitary conduct.

{21}     I agree with the majority that there is no express legislative intent to impose multiple punishments for both involuntary manslaughter and aggravated DWI arising out of a single act of DWI which results in the death of one victim. I also agree with the majority that we therefore must determine if one statute is subsumed within the other. That is to say, it must be determined if the conviction under each statute requires proof of a fact that the other does not. *See Swafford*, 1991-NMSC-043, ¶ 12. If one statute is subsumed within the other, they are the same for double jeopardy

purposes, and convictions and punishment for both are prohibited. *See Swick*, 2012-NMSC-018, ¶ 24 (stating multiple convictions are prohibited) (citing *Swafford*, 1991-NMSC-043, ¶ 30 (stating multiple punishments are prohibited)).

{22}     To determine whether one statute is subsumed within the other, we previously applied the strict elements test established in *Blockburger. see* 284 U.S. at 299, 304 ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). However, our Supreme Court has concluded that the *Blockburger* strict elements test is inadequate in all cases for determining whether one crime is subsumed within another for double jeopardy purposes. *See Montoya*, 2013-NMSC-020, ¶ 49; *Swick*, 2012-NMSC-018, ¶ 21; *Gutierrez*, 2011-NMSC-024, ¶ 58.

{23}     Where a statute is "multi-purposed and written with many alternatives, or is vague and unspecific[,]" a modified *Blockburger* analysis is used to determine if one crime is subsumed within the other. *Gutierrez*, 2011-NMSC-024, ¶ 59 (emphasis, internal quotation marks, and citation omitted). Under this analysis, appellate courts "[look] beyond [the] facial statutory language to the actual legal theory in the particular case by considering such resources as the evidence, the charging documents, and the jury instructions." *Montoya*, 2013-NMSC-020, ¶ 49 (citing *Swick*,

12

2012-NMSC-018, ¶¶ 21, 26); *see Ramirez*, 2016-NMCA-072, ¶ 22 (stating that the modified *Blockburger* test is used "to determine whether the state's theory for one crime, as charged to the jury, is logically subsumed . . . within the state's theory for a separate crime"); *Gutierrez*, 2011-NMSC-024, ¶ 53 (considering the prosecution theory of the case as expressed in the charging document and jury instructions to determine if double jeopardy was violated where two separate statutes were violated). When these tools are used, if doubt still remains regarding the legislative intent, the ambiguity must be resolved in favor of a defendant under the rule of lenity. *See Montoya*, 2013-NMSC-020, ¶ 51 (citing *Swick*, 2012-NMSC-018, ¶ 30).

{24}    Defendant was convicted of involuntary manslaughter as a lesser included offense to the indicted charge of first degree murder. Involuntary manslaughter under NMSA 1978, Section 30-2-3(B) (1994) may be committed in three different ways: "in the commission of an unlawful act not amounting to [a] felony, *or* in the commission of a lawful act which might produce death in an unlawful manner *or* without due caution and circumspection." (Emphasis added). Each of the three different ways in which involuntary manslaughter may be committed has numerous, generally described ambiguous alternatives, multiple purposes, and deterrent possibilities. Following *Montoya*, *Swick*, and *Gutierrez*, I therefore depart from the *Blockburger* strict elements test and proceed to examine the actual legal theory supporting

13

Defendant's convictions. *See Gutierrez*, 2011-NMSC-024, ¶ 59 (concluding that because the phrase "anything of value" in NMSA 1978, Section 30-16-2 (1973) defining "robbery" is "vague and unspecific," the modified *Blockburger* test would be applied by reference to the state's legal theory of the case).

{25} The legal theory for Defendant's conviction of involuntary manslaughter was that Defendant caused "the unlawful killing of [Nevarez] without malice" by "the commission of an unlawful act not amounting to [a] felony[.]" Section 30-2-3(B). The only "unlawful act not amounting to a felony" that Defendant committed under the evidence and the State's legal theory to support the involuntary manslaughter conviction is the misdemeanor of aggravated DWI under Section 66-8-102. *See State v. Deming*, 1959-NMSC-074, ¶¶ 1, 23, 66 N.M. 175, 344 P.2d 481 (affirming convictions for involuntary manslaughter when the defendant was driving while under the influence of alcohol and collided with a motor scooter, killing the riders); *State v. Alls*, 1951-NMSC-016, ¶¶ 4, 10, 18-20, 55 N.M. 168, 228 P.2d 952 (concluding that driving while under the influence of alcohol constitutes an unlawful act, not amounting to a felony, in affirming the defendant's involuntary manslaughter conviction). We are therefore confronted with the question of whether, under the evidence and legal theory of this case, aggravated DWI is subsumed within involuntary manslaughter. Pursuant to *Montoya*, 2013-NMSC-020, ¶ 49; *Ramirez*,

14

2016-NMCA-072, ¶ 22; and *Gutierrez*, 2011-NMSC-024, ¶ 53, I look to the jury instructions for guidance.

{26} To find Defendant guilty of aggravated DWI, the jury was required to find that the State proved the following elements beyond a reasonable doubt:

> 1. The defendant operated a motor vehicle;
>
> 2. At that time the defendant was under the influence of intoxicating liquor, that is, as a result of drinking such liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public;
>
> 3. The defendant caused the death of Carlos Nevarez, III;
>
> 4. This happened in New Mexico, on or about the 12[th] day of June, 2013.

In finding Defendant guilty of aggravated DWI, the jury found that Defendant caused Nevarez's death while DWI, and the jury also found that Defendant committed involuntary manslaughter by the same DWI. Therefore, under the evidence and legal theory of the case, Defendant was convicted of two separate homicide convictions by committing a single act of DWI, and Defendant's unintended killing of Nevarez by involuntary manslaughter failed to require proof of a fact that the aggravated DWI did not. The result is that the aggravated DWI conviction is subsumed by the involuntary manslaughter conviction, and Defendant's conviction and sentence for both violate double jeopardy.

15

## C.      Majority Opinion

{27}     I agree with the majority that death is not a statutory element of aggravated DWI under Section 66-8-102. Aggravated DWI under Section 66-8-102(D)(2) is committed when "bodily injury" results from DWI, and death is not included in the definition of "bodily injury" in the aggravated DWI statute. Section 66-8-102(V)(1) defines "bodily injury" as "an injury to a person that is not likely to cause death or great bodily harm to the person, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the person's body[.]" However, what the majority overlooks and ignores, is that the instructions given to the jury are the law of the case. *See Couch v. Astec Indus., Inc.*, 2002-NMCA-084, ¶ 40, 132 N.M. 631, 53 P.3d 398 ("Jury instructions not objected to become the law of the case."); *see also State v. Trujillo*, 2012-NMCA-092, ¶¶ 16-18, 287 P.3d 344 (reversing the defendant's conviction for criminal sexual contact of a minor (CSCM) in the second degree because under the jury instructions, the defendant's conduct constituted CSCM in the third degree, not CSCM in the second degree). The result, under the evidence, the State's theory, and the instructions, is that Defendant was convicted of aggravated DWI for causing the death of Nevarez while DWI, and for involuntary manslaughter by the same DWI.

16

{28} In New Mexico, multiple homicide convictions for causing a single death violate double jeopardy. In *Cooper*, 1997-NMSC-058, ¶ 53, our Supreme Court agreed with the defendant's argument that "the fact that there was only one murder victim means he can be convicted only once for murder[,]" and concluded that separate convictions for felony murder and second degree murder for the death of a single victim violated double jeopardy. Similarly, in *Santillanes*, 2001-NMSC-018, ¶ 5, our Supreme Court held that the convictions for both vehicular homicide and child abuse resulting in death for the same victims also violated double jeopardy. In coming to this conclusion, the Supreme Court agreed with "the generally accepted notion that one death should result in only one homicide conviction," and that "[i]t is the death of another that the Legislature intended to punish, not the manner in which it was accomplished." *Id.* (internal quotation marks and citation omitted). Finally, in *Montoya*, 2013-NMSC-020, ¶¶ 11, 54, our Supreme Court held that separate convictions for voluntary manslaughter and shooting at a motor vehicle resulting in death for the same victim violated double jeopardy, and in doing so, reaffirmed the reasoning "that one death should result in only one homicide conviction under New Mexico law." *Id.* ¶ 43 (internal quotation marks and citation omitted).

{29} In my opinion, the majority errs by focusing its attention on the statutory elements of aggravated DWI and limiting its analysis to "other indicia of legislative intent" while ignoring the evidence, the State's theory, and the law of the case contained in the jury instructions. Majority Op., ¶¶ 9-11. In doing so, the majority is reverting back to the strict elements *Blockburger* test instead of the modified *Blockburger* test our Supreme Court has instructed us to follow.

{30} Moreover, to the extent there is "other indicia of legislative intent," it is that the Legislature intends that a single conviction will result from one DWI that results in a single death. "A person who commits homicide by vehicle while under the influence of intoxicating liquor or while under the influence of any drug is guilty of a second degree felony[.]" NMSA 1978, § 66-8-101(C) (2016). In *State v. Yarborough*, 1996-NMSC-068, ¶¶ 28-29, 122 N.M. 596, 930 P.2d 131, our Supreme Court discussed the legislative history of our involuntary manslaughter statute and the homicide by vehicle statute and held, "the [L]egislature intended to preempt the crime of involuntary manslaughter with the specific crime of homicide by vehicle when the predicate offense is a violation of the Motor Vehicle Code." *Id*. ¶ 30. Since aggravated DWI is a violation of the Motor Vehicle Code, I would follow *Yarborough*'s reasoning and conclude that by adopting the crime of homicide by

18

vehicle, our Legislature expressed its intent that only one conviction for a death is permitted when a single DWI causes a single death.

**D.    Conclusion**

{31}    In my opinion, the constitutional protection against double jeopardy mandates that Defendant's conviction and sentence for aggravated DWI must be vacated. Since the majority disagrees, I dissent.

_____

**MICHAEL E. VIGIL, Judge**

19